Citation Nr: 1206486 
Decision Date: 02/22/12 Archive Date: 03/01/12

DOCKET NO. 09-39 142 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to special monthly compensation based upon the loss of use of the right testicle.

2. Entitlement to special monthly compensation based upon the loss of the left testicle.

3. Entitlement to service connection for a seminal vesicle cyst, claimed as a prostate nodule.

4. Entitlement to service connection for a cardiac disability, claimed as arterial sclerotic heart disease.

5. Entitlement to service connection for residuals of a left inguinal hernia repair, claimed as residuals of a herniorrhaphy.

6. Entitlement to service connection for arterial hypertension.

7. Entitlement to service connection for erectile dysfunction.

WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Kristy L. Zadora, Associate Counsel


INTRODUCTION

The Veteran had active duty service from July 1977 to July 1997.

These matters come before the Board of Veterans' Appeals (Board) on appeal from an August 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida which, in pertinent part, denied the Veteran's claims for service connection for a prostate nodule/seminal vesicle cyst, arteriosclerotic heart disease, a left inguinal hernia repair, arterial hypertension and erectile dysfunction. In addition, the Veteran's claims for special monthly compensation based upon loss of use of a creative organ and the removal of the left testicle (i.e., status-post left orchiectomy) were denied.

The Veteran testified before the undersigned Acting Veterans Law Judge (AVLJ) at a May 2011 RO (Travel Board) hearing. A hearing transcript has been associated with the claims file.

Subsequent to the issuance of the July 2009 statement of the case (SOC), the Veteran submitted evidence pertinent to the claims on appeal. RO consideration of this evidence was accompanied was waived in May 2011. See 38 C.F.R. § 20.1304 (2011).

The issues of entitlement to special monthly compensation based upon the loss of use of a right testicle as well as service connection for arterial hypertension, arterial sclerotic heart disease, residuals of a left inguinal hernia repair and erectile dysfunction are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, D.C.


FINDINGS OF FACT

1. The Veteran's cryptorchidism of the left testicle is a congenital or developmental defect under VA regulations. 

2. The Veteran's seminal vesicle cyst was incurred during service.


CONCLUSIONS OF LAW

1. The criteria for the establishment of special monthly compensation for the loss of a left testicle have not been met. 38 U.S.C.A. §§ 1110, 1111, 1114(k), 1131, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.350, 4.9 (2011).

2. Resolving all reasonable doubt in favor of the Veteran, the criteria for the establishment of service connection for a seminal vesicle cyst have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a) (2011).

Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); C.F.R. § 3.159(b)(1). VCAA notice should be provided to a claimant before the initial unfavorable AOJ decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

Given the Board's favorable disposition of the Veteran's claim for service connection for a seminal vesicle cyst, all notification and development actions needed to fairly adjudicate that appeal have been accomplished.

The Veteran was provided with VCAA notice with regards to his claim for the removal of a left testicle in an August 2007 letter. This letter provided notice as to what evidence as required to substantiate his claim. This letter informed him of what evidence VA would obtain, of what evidence he was expected to provide, and of what assistance the VA could provide the Veteran in obtaining evidence from other agencies. This letter provided proper preadjudication notice under Pelegrini.

The Veteran has substantiated his status as a veteran. The remaining elements of proper preadjudication Dingess notice were provided in the August 2007 letter.

The VCAA requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim(s). 38 U.S.C.A. §5103A; 38 C.F.R. §3.159 (c), (d). This duty to assist contemplates that VA will help a claimant obtain records relevant to his claim(s), whether or not the records are in Federal custody, and that VA will provide a medical examination and/or opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

VA has met the duty to assist the Veteran in the development of the instant claim. The evidence of record includes the service treatment records, VA treatment records, private treatment records and a VA examination report. During the May 2011 hearing, the Veteran testified that all private treatment records had been given to VA.

The CVAC has held that the provisions of 38 C.F.R. § 3.103(c)(2) imposed two distinct duties on VA employees, including Board personnel, in conducting hearings: the duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010) (per curiam). Effective August 23, 2011, VA amended its regulations to clarify that the provisions of 38 C.F.R. § 3.103(c)(2) applied only to hearings before the agency of original jurisdiction (AOJ) and not before the Board. 76 Fed. Reg. 52572-5 (Aug. 23, 2011) (to be codified at 38 C.F.R. §§ 3.103(a)-(c), 20.706). As the Veteran's hearing took place before August 23, 2011, the Bryant duties may still be applicable. During the May 2011 hearing, the issues on appeal were identified. The undersigned inquired as to whether the Veteran's private physicians have offered an opinion as to the etiology of his claimed condition. The Board therefore concludes that it has fulfilled its duty under Bryant.

Thus, there is no indication that there is any additional relevant evidence to be obtained by either VA or the Veteran. Therefore, the Board determines that VA has made reasonable efforts to the assist the Veteran in obtaining the evidence necessary to substantiate the instant claim.

Service Connection Criteria

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage v. Grober, 10 Vet. App. 488, 495-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999).

In relevant part, 38 U.S.C.A. § 1154(a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The United States Court of Appeals for the Federal Circuit (the Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical profession." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence.")

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted").

Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Special monthly compensation is payable at a specified rate if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs. 38 U.S.C.A. § 1114(k), 38 C.F.R. § 3.350(a). Loss of a creative organ will be shown by acquired absence of one or both testicles (other than undescended testicles) or ovaries or other creative organ. Loss of use of one testicle will be established when examination by a board finds that: (a) The diameters of the affected testicle are reduced to one-third of the corresponding diameters of the paired normal testicle, or (b) The diameters of the affected testicle are reduced to one-half or less of the corresponding normal testicle and there is alteration of consistency so that the affected testicle is considerably harder or softer than the corresponding normal testicle; or (c) If neither of the conditions (a) or (b) is met, when a biopsy, recommended by a board including a genitourologist and accepted by the veteran, establishes the absence of spermatozoa. When loss or loss of use of a creative organ resulted from wounds or other trauma sustained in service, or resulted from operations in service for the relief of other conditions, the creative organ becoming incidentally involved, the benefit may be granted. 38 C.F.R. § 3.350(a)(1)(i-ii).
 
When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Special Monthly Compensation for Loss of Use and Loss of a Creative Organ

The Veteran contends that entitlement to special monthly compensation for the loss of his left testicle is warranted as it was removed during service due to sharp abdominal pains. He further contends that his undescended left testicle was a congenital disease rather than a congenital defect under VA regulations as it was not a static disability and was capable of worsening, as evidenced by the incurrence of abdominal pains during service.

A June 1977 service entrance examination noted an undescended left testicle peripheral benzodiapezine receptor (PBR). A June 1978 urology note indicated that the Veteran had a lifelong history of an undescended left testicle and a left orchiectomy was recommended.

A July 1978 narrative summary indicated that the Veteran began noticing sharp pains in the left inguinal area two months prior to admission. Physical examination revealed a small right testicle and the left hemi-scrotum that was empty. A left orchiectomy was performed. 

A June 1997 service discharge examination noted an absent left testicle status-post orchiectomy secondary to an undescended left testicle.

A June 1977 personnel record indicated that the Veteran did not meet the physical standards for enlistment due to an undescended left testicle. The Veteran agreed to undergo appropriate medical correction or procedures as prescribed by the Chief, Bureau of Medicine and Surgery, for his undescended left testicle; this correction "may include admission to a medical facility and corrective surgery." This document was signed by the Veteran.

A December 2007 VA examination reflected the Veteran's reports of entering the military with an undescended testicle in 1978 and subsequently undergoing a left orchiectomy. Physical examination noted that his left testicle was absent. Following this examination and a review of the Veteran's claims file, a diagnosis of a left orchiectomy was made. The examiner opined that the Veteran's left orchiectomy was service connected as the surgery occurred during service. He did have a pre-service history of a left undescended testicle and underwent the left orchiectomy due to abdominal pain.

During a May 2011 hearing, the Veteran testified that his left testicle was undesceneded upon entrance into service and he was admitted to service through a medical remedial program. After about a year of service, he reported to sick call on several occasions after working the flight deck due to groin pain. He then had his left testicle removed.

Various internet articles were submitted by the Veteran. An undated article from Merck Manuals indicated that cryptorchidism was the failure of one or both testicles to descend into the scrotum. A 1984 article on cryptorchidism noted that the etiological considerations of the "disease" included the possibility of inadequate hormonal stimulation and mechanical impediments to descent. A 1987 article on the development of cryptorchil testes states that a majority of pathologists and endocrinologists described cryptorchidism as a congenital malformation of one or both testicles and that it was almost "universally accepted" that abdominal testes were congenitally malformed. 

A veteran is considered to have been in sound condition upon entry into service, except as to defects, infirmities, or disorders noted on the entrance examination, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease preexisted service and was not aggravated during service. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). However, congenital or developmental defects are not considered diseases or injuries for VA compensation purposes. See 38 C.F.R. §§ 3.303(c), 4.9. As such, a congenital or developmental defect generally may not be service connected as a matter of law; however, service connection may be granted if such a defect is subject to, or aggravated by, a superimposed disease or injury during service which results in additional disability. See VAOPGCPREC 82-90 (July 18, 1990), published at 56 Fed. Reg. 45,711 (1990); see also Winn v. Brown, 8 Vet. App. 510, 516 (1996); Natali v. Principi, 375 F.3d 1375, 1380 (Fed. Cir. 2004). 

An undescended left testicle was noted on the Veteran's June 1977 service entrance examination and a June 1977 personnel record documented that the Veteran did not meet the physical standards for enlistment due to the undescended left testicle. The Veteran has acknowledged that this condition preexisted service. He is therefore not entitled to the presumption of soundness with regard to his undescended left testicle. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b).

Cryptorchidism, or an undescended testicle, is considered a congenital defect for VA purposes. The statutory provisions regarding the award of special monthly compensation specifically exclude the loss of a creative organ due to an undescended testicle. See 38 C.F.R. § 3.350(a)(1). Dorland's Medical Dictionary defines cryptorchidism as a developmental defect characterized by the failure of one or both of the testes to descend into the scrotum. 447 (31st ed. 2007). The CVAC has generally upheld the Board's interpretation that cryptorchidism is a congenital defect under VA regulations. See, e.g., Gross v. Peake, WL 3895520 (2008) (unpublished).

The December 2007 VA examiner opined that the Veteran's left orchiectomy was "service connected" as the surgery occurred during service. However, this examiner did not address whether the Veteran's undescended testicle was a congenital disease or defect, and if the condition was a congenital disease, whether it was aggravated by service. In addition, this opinion failed to acknowledge that this condition preexisted service. An opinion based on an inaccurate factual premise has no probative value. See Reonal v. Brown, 5 Vet. App. 460, 461 (1993); Swann v. Brown, 5 Vet. App. 229, 233 (1993); Black v. Brown, 5 Vet. App. 179, 180 (1993). This opinion is therefore being afforded little, if any, probative weight.

The Veteran has submitted various medical treatises/articles addressing cryptorchidism and several that generally refer to the condition as a "disease." However, these documents lack probative weight as they do not specifically address the Veteran, to include his medical history documented in the claims file. These documents also do not address VA's regulatory distinction between a congenital defect and a congenital disease. In a long line of cases, the CVAC has consistently held that medical treatise evidence that is generic and inconclusive as to the specific facts in a case was insufficient to establish causal link. See, e.g., Mattern v. West, 12 Vet. App. 222 (1999). These articles are therefore little, if any, probative weight.

In addition, the Veteran has submitted a copy of a Board decision in another veteran's case in which service connection for residuals of left orchiectomy, which was performed due to an undescended testicle, was granted. However, it is well established that prior Board decisions do not constitute binding precedent. See 38 U.S.C.A. § 7104; 38 C.F.R. § 20.1303. Prior decisions in other appeals may be considered in a case to the extent that they reasonably relate to the case, but each case presented to the Board must be decided on the basis of the individual facts of the case in light of applicable procedure and substantive law. Id. The prior Board decision cited by the Veteran did not address the central issue in this matter, namely the VA regulatory distinction between a congenital disease and a congenital defect. Therefore, this prior Board decision does not compel the grant of benefits in the instant case.

The Board has considered the doctrine of reasonable doubt, but as the preponderance of the evidence is against the Veteran's claim under this theory the doctrine is not for application. 38 U.S.C.A. §5107(b); 38 C.F.R. § 3.102.

Seminal Vesicle Cyst

A June 1977 service entrance examination was negative for any relevant abnormalities. Physical examination conducted in July 1978 revealed bilateral cystic nodular masses above the prostate that were felt to be cystic seminal vesicles.

An impression of a probable left seminal vesicle cyst was made in December 1987. A January 1988 ultrasound was negative for abnormal cystic lesions.

An August 1992 treatment note found a small prostate with a supra-prostate smooth nodule and cyst that was distinct from the prostate. An assessment of an asymptomatic seminal vesicles cyst was made.

In October 1995, a stable seminal vesicle cyst was assessed.

A June 1997 service discharge examination found the Veteran's prostate to be slightly enlarged with a one cm cyst just left of the midline. The Veteran reported a tumor, growth, cyst or cancer in an accompanying Report of Medical History (RMH).

A February 2005 private urology treatment note contained a diagnosis of a seminal vesicle cyst.

A December 2007 VA genitourinary examination reflected the Veteran's reports of a stable nodule since service. On physical examination, the examiner was unable to feel the prostate nodule or the seminal vesicle cyst. Following this examination and a review of the Veteran's claims file, a diagnosis of a prostate nodule/seminal vesicle cyst was made. The examiner opined that this disability was "service connected" as it was diagnosed while the Veteran was in service.

An August 2009 private urology treatment note revealed a seminal vesicle cyst that had been unchanged for years. 

During the May 2011 hearing, the Veteran testified that the VA examiner was unable to feel the cyst due to its location and that it was visible on ultrasound.

The Veteran has a current disability as he has been diagnosed with a prostate nodule/seminal vesicle cyst. In order for this current disability to be recognized as service connected, there must be a link between thus condition and an in-service injury or disease. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. §§ 3.307, 3.309; Shedden and Hickson, supra.

Service treatment records document a cystic seminal vesicle in July 1978 as well as in June 1997. A December 2007 VA genitourinary examiner diagnosed a prostate nodule/seminal vesicle cyst and opined that this condition was generally "service connected" as it was diagnosed while the Veteran was in service. Post-service treatment records continue to document a seminal vesicle cyst. No other medical opinion regarding the etiology of this disability has been submitted. The Veteran's statements regarding a continuity of symptomology are credible and consistent with the clinical evidence of record.

On balance, the evidence is at least in equipoise. Resolving all doubt in the Veteran's favor, the Board finds that the criteria for service connection for seminal vesicle cyst have been met. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. The appeal is granted.


ORDER

Entitlement to special monthly compensation based upon the loss a creative organ is denied.

Entitlement to service connection for a seminal vesicle cyst is granted.


REMAND

Residuals of a Hernia Repair and Erectile Dysfunction

Once the Secretary undertakes the effort to provide an examination when developing a service connection claim, even if not statutorily obligated to do so, he must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

VA regulations provide that where an examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes. 38 C.F.R. § 4.2; see 38 C.F.R. § 19.9. Where the Board makes a decision based on an examination report which does not contain sufficient detail, remand is required "for compliance with the duty to assist by conducting a thorough and contemporaneous medical examination." Goss v. Brown, 9 Vet. App 109, 114 (1996); Stanton v. Brown, 5 Vet. App. 563, 569 (1993).

Service treatment records document a left indirect hernia, status-post bassini herniorrhaphy on the left, in July 1978. The Veteran has reported that his erectile dysfunction began during service but that he did not seek treatment for this condition from the medical staff. The medical treatise evidence submitted by the Veteran suggests that erectile dysfunction and/or hernias may be complication of cryptorchidism. A December 2007 VA examiner generally opined that the Veteran's claimed residuals of a hernia repair and erectile dysfunction were "service connected" as they occurred or were performed during service. However, the examiner did not address whether the impact, if any, of the Veteran's undescended left testicle on these conditions and is inadequate to decide these claims. See Reonal, supra. Such an opinion is required to adjudicate these claims.

Loss of Use of the Right Testicle, Arterial Hypertension and Arterial sclerotic heart Disease

VA is obliged to provide an examination when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service; and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A(d); McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. Id at 83. The threshold for finding whether the evidence indicates a link between a current disability and service is low. Id; Locklear v. Nicholson, 20 Vet. App. 410 (2006).

Service treatment records were negative for diagnoses related to hypertension or a cardiac disability but do show an elevated blood pressure at service discharge. In addition, service treatment records document the presence of a small right testicle in July 1978, but it is not clear whether this physical abnormality manifests a loss of use. Mild atherosclerotic disease was found in November 2000 and hypertension was reported to have been diagnosed in approximately 1999 in a November 2000 private treatment note. Both diagnoses were made more than one year following service discharge. A VA examination is therefore required to determine the nature and etiology of the Veteran's claimed hypertension and cardiac disabilities.

Accordingly, the case is REMANDED for the following action:

1. The RO/AMC should afford the Veteran a VA genitourinary examination to determine the nature and etiology of the Veteran's claimed residuals of a hernia repair, erectile dysfunction and the loss of use of his right testicle. The examiner should review the claims folder and note such review in the examination report. The examination should include a review of the Veteran's history and current complaints as well as a comprehensive evaluation and any tests deemed necessary.

The examiner is asked to furnish an opinion with respect to the following questions:

(a) Based on the evidence of record, can it be determined with a reasonable degree of medical certainty, that the Veteran has developed residuals of a hernia repair, erectile dysfunction and the loss of use of his right testicle? If so, please specify the diagnosis. The examiner should identify all such disorders that have been present at any time since June 2007.

(b) Based on a review of the entire record evidence, can it be concluded with a reasonable degree of medical certainty, that the Veteran had a hernia, erectile dysfunction or the loss of use of his right testicle prior to entering service in July 1977? If so, state (if possible) the approximate date of onset of any such injury, defect, or disorder?

(c) If any such injury, defect, or disorder, including the claimed residuals of a hernia repair, erectile dysfunction and the loss of use of his right testicle preexisted his period of active duty service, was there a worsening of such injury, defect, or disorder during service? If so, whether such a worsening (i.e., increase in severity) represented the natural progress of the injury, defect, or disorder; or, was such a worsening beyond the natural progress of the injury, defect, or disorder (representing a permanent worsening of the underlying condition).

(d) If the examiner determines that the claimed residuals of a hernia repair, erectile dysfunction and the loss of use of the right testicle did not preexist the Veteran's service, is it at least as likely as not (50 percent or greater probability) that any residuals of a hernia repair, erectile dysfunction and/or the loss of use of his right testicle had its onset during the Veteran's period of active duty service from July 1977 to July 1997; or, was such disorder caused by any incident or event that occurred during his period of service? The examiner should specifically comment on the July 1978 diagnosis of a left indirect hernia and the Veteran's claim that he developed this hernia as a result of lifting heavy objects. In addition, the examiner should comment on the July 1978 finding of a small right testicle.

(e) What impact, if any, did the Veteran's undescended left testicle have on his claimed residuals of a hernia repair, erectile dysfunction or the loss of use of his right testicle?

In answering each of the questions posed above, the examiner is advised that the Veteran is competent to report injuries and symptoms, and that his reports must be considered in formulating the requested opinion. If the Veteran's reports are discounted, the examiner should provide a rationale for doing so.

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

2. The RO/AMC should afford the Veteran a VA cardiac examination to determine the nature and etiology of the Veteran's claimed hypertension and arterial sclerotic heart disease. The examiner should review the claims folder and note such review in the examination report. The examination should include a review of the Veteran's history and current complaints as well as a comprehensive evaluation and any tests deemed necessary.

The examiner is asked to furnish an opinion with respect to the following questions:

(a) Based on the evidence of record, can it be determined with a reasonable degree of medical certainty, that the Veteran has developed hypertension or a cardiac disability? If so, please specify the diagnosis. The examiner should identify all such disorders that have been present at any time since June 2007.

(b) Is it at least as likely as not (50 percent or greater probability) that any diagnosed hypertension or cardiac disability, including arterial sclerotic heart disease, had its onset during the Veteran's periods of active duty service, including from July 1977 to July 1997; or, was any such disorder caused by any incident or event that occurred during his period of service?

(c) In the event that hypertension and/or arteriosclerosis are diagnosed, did either disability manifest to a compensable degree within one year of service discharge (i.e., July 1998)? 

In answering each of the questions posed above, the examiner is advised that the Veteran is competent to report injuries and symptoms, and that his reports must be considered in formulating the requested opinion. If the Veteran's reports are discounted, the examiner should provide a rationale for doing so.

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

3. The RO/AMC should review the examination report(s) to insure that it (they) contain all findings and opinions requested in the remand.

4. If any claim on appeal remains denied, the RO/AMC should issue a supplemental statement of the case before returning the case to the Board, if otherwise in order

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court 

of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).


______________________________________________
JOHN Z. JONES
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs