**Rodney J. BLACK, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–680.**

United States Court of Veterans Appeals.

June 1, 1993.

Rodney J. Black, pro se.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Vito A. Clementi, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Rodney J. Black, appeals a May 12, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for a low back disorder.

## BACKGROUND

Appellant served in the Air Force from April 1960 to January 1965. In April 1963, he injured his back while off-loading cargo from an aircraft, and was subsequently hospitalized for eight days. X-rays taken during his hospitalization "were negative except for some degree of scoliosis." Upon discharge from the hospital, appellant's physician found no evidence of a back disorder, or of back pain and tenderness. Appellant did not complain of any further back pain during service, and his separation examination does not indicate any abnormalities.

In August 1974, appellant submitted an application for disability compensation, in which he claimed that he had been suffering from a back injury with "severe pain ... ever since 1963." On September 16, 1974, the Veterans' Administration (now the Department of Veterans Affairs) (VA) Regional Office (RO) concluded that the 1963 episode of lumbosacral strain was acute and transitory in nature without residuals since there was no continuity of symptomatology.

Following the September 1974 denial of service connection, appellant submitted letters from several physicians in support of his claim. In a letter dated October 1, 1974, Dr. Reid, a private physician, averred that he had treated appellant for sprained posterior neck muscles in August 1969, following an automobile accident, and again in July 1974 for muscle spasms in the low back and neck. In an October 31, 1974, statement, Dr. Barnes, also a private physician, recalled that he had previously treated appellant for a back disorder; however, he could not remember the details of his treatment. In December 1974, Dr. Sisler stated that he first treated appellant for back pain in January 1974, after appellant slipped on ice and reinjured his back. Dr. Sisler further reported that appellant stated he had experienced occasional back pain since April 1963. On January 16, 1975, the VARO confirmed and continued its denial of service connection for a back disorder. The VARO sent appellant a letter detailing his appellant rights; however, this decision was not appealed and became final.

In June 1983, appellant requested that the VARO reopen his claim. Appellant's newly submitted evidence consisted of a March 1975 statement from Dr. Bryngelson, a private physician, a March 1975 consultation report from Saint Francis Hospital, a private facility, and August 1975 and March 1985 statements from Dr. Gibson, a private chiropractor. Dr. Bryngelson initially diagnosed appellant with "5 vertebral bodies lumbar type with a distinct asymmetry of the facets at the L-4 and the L-5 level and incomplete fusion of the posterior spinus process of L-5, slight left scoliosis at the L-4 and 5 level." However, upon

further examination Dr. Bryngelson could not determine the etiological cause of appellant's back disorder. Likewise, the March 1975 hospitalization report indicates no neurological deficit or organic reason for appellant's back pain. However, Dr. Gibson opined in his August 1975 statement that appellant had suffered a severe injury to the lumbar spine, which produced his current back disorder. In his March 1985 statement, Dr. Gibson stated that there was continued deterioration of the osteophytic formation at L1–2 and T12, and reiterated that appellant's back disorder was caused by an injury to the lumbar spine. In April 1985, appellant testified at a personal hearing that he had suffered sporadic back pain from April 1963. In April 1985, the VARO concluded that appellant's present back disability was due mainly to his 1974 accident, and denied his claim.

Appellant appealed this claim to the Board and submitted statements from Dr. William Smith, a private physician, and lay statements from his sister and his ex-wife in support of his claim. Dr. Smith averred that appellant had suffered significant degenerative lumbar disc disease, which should be service connected to the 1963 injury. Both appellant's sister and appellant's ex-wife stated that appellant had injured his lower back in April 1963 and had had back pain ever since. On July 1, 1986, the BVA decided that appellant's April 1963 back injury was acute and transitory in nature, and that appellant's newly submitted evidence did not provide a new factual basis to grant service connection for a back disorder.

In January 1988, appellant once more attempted to reopen his claim. Appellant's newly submitted evidence consisted of lay statements from two fellow servicemen who had served with him, a December 1987 statement from Dr. Gibson, and a March 1985 statement from Nowata General Hospital, a private facility. Both of appellant's service colleagues recounted that appellant had low back pain during service and after April 1963. Additionally, one of his service colleagues, Randal Lowe, stated he had visited appellant in 1966 and 1967 and that appellant continued to have low back pain. Dr. Gibson noted that appellant had suffered an old compression fracture at L–1, which "was long since healed, and not related to his fall of Jan. 15, 1975." Dr. Gibson further stated that in the absence of other trauma, "one must assume this fracture, the accompanying arthritic change and other sequela ... have their origin in 1963." On January 28, 1988, the VARO confirmed and continued the denial of service connection for a low back disorder. Appellant appealed this claim to the Board. On October 28, 1989, the Board determined that the statements from appellant's service colleagues were "new and material" evidence, and reopened appellant's claim. After reviewing appellant's claim in light of all the evidence, the BVA concluded that the evidence did not establish a claim of service connection for a low back disorder.

In January 1990, appellant submitted previously considered service medical records showing treatment for lumbosacral strain in April 1963 in yet another attempt to reopen his claim. On March 5, 1990, the VARO issued a rating decision confirming and continuing the previous denial of benefits. In July 1991, the BVA remanded appellant's claim and directed the VARO to send appellant a Supplemental Statement of the Case advising him of the "new and material" evidence requirement to support a reopened claim. After a return of appellant's claim to the Board, appellant sent the Board a copy of a previously unconsidered August 1974 VA hospital summary pertaining to treatment for lumbar strain. On November 7, 1991, the Board remanded appellant's claim again for the VARO to consider the 1974 VA hospitalization report. On November 19, 1991, the VARO determined that the 1974 VA hospitalization report was "new and material" evidence. However, the VARO continued its previous denial of service connection for a back disorder. On May 12, 1992, the Board denied appellant's claim. It is this decision that the Court is now reviewing.

## ANALYSIS

The BVA conducted a de novo review of appellant's claim and concluded:

The Board has made a careful longitudinal review of the record and observes that the veteran incurred a lumbosacral strain in an April 1963 accident which necessitated a subsequent period of hospitalization and that he was returned to active flight status within a week of his injury. As a low back disorder was not reported during the remainder of his active military service and as such a disability was not clinically manifested at service separation and for many years thereafter, we conclude that the veteran's inservice lumbosacral strain was acute and transitory in nature and resolved itself without chronic residuals. Given the absence of sufficiently probative documentation of a low back disorder between April 1963 and July 1974 and in light of the veteran's post-service low back trauma, we believe that a grant of service connection would constitute no more than mere speculation.

Further, we recognize that several physicians in the 1980's have stated that the veteran's back condition was service related. However, these statements, we feel, are mere suppositions; it is probable that the veteran's fall in 1974 precipitated the veteran's present back condition rather than his much more remote service injury....

*Rodney J. Black*, BVA 92–12088, at 6–7 (May 12, 1992).

The Board characterized Dr. Smith's and the other medical opinions, which provided that appellant's present low back disorder is related to his in-service back injury, as suppositious. *See Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992). That characterization is not inaccurate. These opinions are general conclusions based on history furnished by appellant and are unsupported by clinical evidence; furthermore these opinions do not account for the possible effects of post service injuries. *See* 38 C.F.R. § 3.303(b) (1992). However, the Board's conclusion that appellant's fall on the ice in January 1974 was the "most probable" cause of the back injury is equally suppositious as it is also unsupported by any objective medical evidence. *Colvin v. Derwinski* 1 Vet.App. 171, 175 (1991). In summary, the evidence shows trauma to the back during service, and trauma to the back after service. No attempt has been made by way of a physical examination or independent medical opinion to determine the extent to which (if any) the service injury may have contributed to the current back condition or the extent to which (if any) the post-service trauma may have contributed. An attempt should be made to better develop the medical evidence.

The May 12, 1992, decision of the Board is VACATED and the matter REMANDED with instructions for the Board to readjudicate the case in accordance with the Court's opinion.