http://www.va.gov/vetapp16/Files5/1641928.txt

Citation Nr: 1641928 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 12-21 494 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan

THE ISSUES

1. Entitlement to service connection for the cause of the Veteran's death.

2. Entitlement to Dependency and Indemnity Compensation (DIC) under the provisions of 38 U.S.C.A. § 1318.

REPRESENTATION

Appellant represented by: The American Legion

WITNESSES AT HEARING ON APPEAL

Appellant and her daughter, P.F.

ATTORNEY FOR THE BOARD

P. Olson, Counsel 

INTRODUCTION

The Veteran had active military service from March 1945 to July 1947. The appellant is the Veteran's surviving spouse.

This matter is before the Board of Veterans' Appeals (Board) following a Board Remand in December 2014. This matter was originally on appeal from an August 2011 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO).

In March 2013, the appellant testified at a videoconference hearing. A transcript of that hearing is of record.

The claims file is now entirely in VA's secure electronic processing systems, Virtual VA and Veterans Benefits Management System (VBMS).

FINDINGS OF FACT

1. The Veteran died in in December 2010 as the result of metastatic prostate cancer. Tuberculosis of the lung was noted to be a contributory condition. 

2. The cause of the Veteran's death developed many years after service and was not the result of a disease or injury incurred in active service, to include inactive pulmonary tuberculosis. 

3. At the time of the Veteran's death, service connection had been in effect since July 27, 1947, for inactive pulmonary tuberculosis at which time he was noted to be 100 percent disabled. For the 10 years immediately preceding his death, he was considered disabled at a noncompensable (zero percent) rate. 

CONCLUSIONS OF LAW

1. The preponderance of the evidence is against a finding that the Veteran's service-connected inactive pulmonary tuberculosis caused or contributed materially or substantially in producing or hastening the Veteran's death. 38 U.S.C.A. §§ 1110, 1310 (West 2014); 38 C.F.R. §§ 3.303, 3.310, 3.312 (2015).

2. The criteria for entitlement to DIC under the provisions of 38 U.S.C.A. § 1318 are not met. 38 U.S.C.A. §§ 5107, 1318 (West 2014); 38 C.F.R. § 3.22 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Preliminary Matter

Pursuant to the Board's December 2014 Remand, the Agency of Original Jurisdiction (AOJ) obtained VA treatment records from 1995 to 2010, obtained a VA medical opinion as the cause of the Veteran's death, readjudicated the claim, and issued a Supplemental Statement of the Case. Based on the foregoing actions, the Board finds that there has been compliance with the Board's December 2014 Remand. Stegall v. West, 11 Vet. App. 268 (1998).

Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or completeness of the application. VA notified the appellant in June 2011, August 2011, and March 2015 of the information and evidence needed to substantiate and complete a claim, to include notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how effective dates are determined. Moreover, during the March 2013 Board hearing, the undersigned explained the issues on appeal and asked question designed to elicit evidence that may have been overlooked with regard to the claim. These actions provided an opportunity for the appellant and her representative to introduce material evidence and pertinent arguments, in compliance with 38 C.F.R. § 3.103 (c)(2) and consistent with the duty to assist. See Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010).

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim. There is no evidence that additional records have yet to be requested. The Veteran's service treatment records are no longer available, most likely having been destroyed in an accidental fire at the National Personnel Records Center in 1973. In cases where the Veteran's service treatment records are unavailable through no fault of the Veteran, there is a heightened obligation to explain findings and to carefully consider the benefit of the doubt rule. O'Hare v. Derwinski, 1 Vet. App. 365 (1991). There is also a heightened obligation to assist the claimant in the development of his case. Id. 

DIC Pursuant to 38 U.S.C.A. § 1310

The law provides dependency and indemnity compensation for a spouse of a Veteran who dies from a service-connected disability. 38 U.S.C.A. § 1310. The death of a Veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312 (a). 

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated during service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303 (a). In order to prevail on the issue of service connection there must be medical evidence of a current disability; medical evidence, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and medical evidence of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Pond v. West, 12 Vet App. 341, 346 (1999). 

Thus, the evidence must show that a service-connected disability was either the principal cause or a contributory cause of death. For a service-connected disability to be the principal (primary) cause of death, it must singly or with some other condition be the immediate or underlying cause or be etiologically related. For a service-connected disability to constitute a contributory cause it must contribute substantially or materially; it is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312. 

The Veteran died in December 2010. The Veteran's amended death certificate dated in May 2011, shows that he died in December 2010 due to metastatic prostate cancer. Tuberculosis of the lung was listed as a significant condition contributing to the death but not resulting in the underlying cause. During his lifetime the Veteran was service connected for a "chest condition" determined to be inactive pulmonary tuberculosis.

Initially, the Board notes that the appellant does not contend, and the evidence does not demonstrate, that the Veteran's terminal prostate cancer was incurred in or aggravated by the Veteran's service. Instead, the appellant contends that the Veteran's service-connected inactive pulmonary tuberculosis contributed substantially and materially to cause the Veteran's death.

VA treatment records from January 1997 to December 2010 do not show any chest complaints until March 2003 at which time he reported a history of chest pain for four or five years which occurred whenever he walked at a rapid pace. The Veteran reported that he got some shortness of breath with these symptoms. In April 2003, a catherization was recommended given the high suspicion for coronary artery disease. 

Pulmonary Function Test in May 2003 showed normal pulmonary mechanics. In June 2003, the Veteran underwent coronary artery bypass graft (CABG) surgery and postoperative respiratory therapy. On his routine two month follow up post CABG, he denied any shortness of breath. 

From May 2003, the Veteran consistently denied shortness of breath and chest pain until September 2010 when the Veteran learned that his prostate cancer was widely metastatic. The Veteran complained of shortness of breath for several weeks with exertion. The Veteran's shortness of breath was noted to be of unclear etiology. The Veteran's primary care provider noted that recent CT of chest showed no acute changes to lungs, no wheezing on exam. The provider hypothesized that it could be cardiac, possibly related to when the Veteran's blood pressure was running high or related to pain due to multiple bone metastases and noted that once the Veteran had been given morphine for pain, it should help decrease the sensation of shortness of breath. The Veteran was also provided with an albuterol inhaler to see it helped his symptoms. 

A VA oncologist noted that the September 2010 bone scan showed significant interval progression of metastatic disease to include the skull, right lower ribs, bilateral SI joints, pelvis, and left proximal femur. CT AP showed interval progression of metastatic disease as characterized by new abdominal and pelvic lymph node enlargement. Interval development of new or larger sclerotic bone lesions in the pelvis, consistent with osseous metastatic progression. CT of the thorax was also consistent with progression of disease. 

In December 2011, the appellant requested a letter from the Veteran's primary care provider indicating that he had a respiratory disease. The primary care provider reviewed the Veteran's medical record and determined that she was unable to write a letter supporting the request. 

In August 2012, a private physician, L.A.H., noted that the Veteran died as a result of metastatic prostate cancer in December 2010 on Hospice service of which she was the Medical Director. The physician noted that old records from treatment for tuberculosis had been burned in a fire many years ago, but the Veteran's siblings were able to attest to his care and that the Veteran's discharge from service was due to complications of tuberculosis ("chest condition"). The physician noted that the Veteran's death certificate was amended by her to reflect the significant history and that he was disabled from this for many years prior to his death. The physician noted that the appellant and her daughter indicated that the Veteran was never able to pass an employment physical due to his chronic "chest condition," and that he worked in farming with his family as he was unable to gain employment and was always self-employed. It was noted that the Veteran had to work slowly and took frequent rests. The physician noted that chest x-ray showed old scar tissue in right middle lobe as well as diffuse interstitial changes and that VA noted, "stable appearing biapical and right lower lobe scarring," typical of post tuberculosis findings. 

A VA medical opinion was obtained in March 2015. The physician stated, 

Veteran's pulmona[]ry tuberculosis did no[t] [substan]tially or materially contribute to his death, nor combined to cause his death nor aided or lent assist[an]ce to the production of his death. 

The examiner explained,

There is no medical nexus establishing causality between Veteran's death and pulmonary tuberculosis. Veteran died [in December 2010], 63 years after discharge form the military. No permanent residual or chronic disability subject to service connection is shown by the service medical records or demonstrated by evid[en]ce following service. Death certificate evidences cause of death as metastatic pro[s]t[at]e cancer. The addendum to the death certificate by the hospice director added tuberculosis lung - SC. There is no medical nexus establishing this addition to the death certificate as contributing substantially or materially to his death, combining to cause his death or aiding or lending assistance to the production of his death. Medical records from VA social Worker, [December] 2010 evidence, "Veteran's Prima[]ry Care Provider Dr. P. is unable to write letter supporting wife's request. She (wife) requested letter form Veteran's Prima[]ry Provider indicat[ing] he had a respiratory disease to help support her claim for survivors benefits." Furthermore, Oncology medical note, [August] 2010 by Dr. BP evidences, "84 year old man experiencing decline in energy and performance-unclear how much can be attributed to his prostate c[a]ncer, despite climbing PSA because his burden is low, his progressive Parkinsonism may better explain his decline." Chest xray report of 2003 evidences, "Stable appearing biapical and RLL scarring-this would be typical of tb finding. Normal sized heart silhou[e]tte noted on 2003 chest xray. This was prior to Vetera[n]'s CABG and spread of cancer." Full consideration of all pertinent and available medical facts is rendered.

The Board notes that there is a difference of opinion among the medical professionals. In deciding whether the Veteran's death is related to his service-connected inactive pulmonary tuberculosis, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Evans v. West, 12 Vet. App. 22, 30 (1998). That responsibility is particularly onerous where medical opinions diverge. At the same time, the Board is mindful that it cannot make its own independent medical determinations and that there must be plausible reasons for favoring one medical opinion over another. Id. 

Here, there are legitimate reasons for accepting the VA examiner's unfavorable medical opinion over the private physician's favorable medical opinion. With regard to medical evidence, an assessment or opinion by a health care provider is never conclusive and is not entitled to absolute deference. Indeed, the courts have provided guidance for weighing medical evidence. They have held, for example, that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998). In addition, an examination that does not take into account the records of prior medical treatment is neither thorough nor fully informed. Green v. Derwinski, 1 Vet. App. 121, 124 (1991). A bare transcription of lay history, unenhanced by additional comment by the transcriber, is not competent medical evidence merely because the transcriber is a health care professional. LeShore v. Brown, 8 Vet. App. 406, 409 (1995). A medical opinion based on speculation, without supporting clinical data or other rationale, does not provide the required degree of medical certainty. Bloom v. West, 12 Vet. App. 185, 187 (1999). Also, a medical opinion is inadequate when unsupported by clinical evidence. Black v. Brown, 5 Vet. App. 177, 180 (1995). Finally, a medical opinion based on an inaccurate factual premise is not probative. Reonal v. Brown, 5 Vet. App. 458, 461 (1993). In sum, the weight to be accorded the various items of medical evidence in this case must be determined by the quality of the evidence and not necessarily by its quantity or source.

Initially, the Board notes that the lay statements from the Veteran's family members do indeed depict a man whose health was in decline. The appellant noted that the Veteran was always denied work as he could not pass a physical. 

The Veteran's daughter noted, "Growing up we always had to watch out for Dad that he did not get too tired or catch a chest cold for fear that it would turn into another pneumonia or trigger the TB to re-occur. Looking back I remember Dad almost always being short of breath when he was working, yet he would deny it if questioned." 

His step-daughter noted, "I own a business and spent a lot of time with [the Veteran and the appellant] when we used to go to the trade shows and then go down to Florida and spend 3 weeks together. I remember [the Veteran] always sitting on the end of the floors in Atlanta GA, resting because he was too tired to walk around each floor. We'd have to go back each time and get him if there was something we thought he should see." 

The Veteran's friend noted that it was obvious that he was not a well man as he moved slowly and took breaks often as he appeared to have trouble breathing. His son-in-law noted that the Veteran was easily fatigued, needing to take frequent periods of rest due to becoming short winded and coughing. 

His son-in-law stated, 

Speaking as an RN with 37 years of experience I can tell you that [the Veteran's] quality of life and his ability to provide for his family since his medical discharge from the U.S. Army due to his contracting Tuberculosis while serving his country on active duty had been markedly compromised.

His step-son noted that he stayed with the Veteran two nights a week from October 1, 2010 though the time of his passing in December 2010 and that he noticed him coughing on a regular basis day and night which intensified as time went on. His step-son noted that the Veteran was on oxygen 24/7 and he grimaced with pain on some of the prolonged coughing spells. His step-son noted that he noticed a decline in the Veteran's health the last five years of his life, that he tired easily and had to rest a lot, that he winded easily and became short of breath when working, and that it became harder for him to do any physical work.

The Veteran's youngest brother noted that he was the Veteran's business partner and that the Veteran needed many breaks from his work due to his difficult breathing and the fact that he tired easily.

As noted above, for a service-connected disability to be a contributory cause it must contribute substantially or materially; it is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312. A causal connection between the Veteran's death and his service-connected inactive pulmonary tuberculosis has not been shown. 

The death certificate noted that the Veteran died from metastatic prostate cancer. The death certificate was amended to include tuberculosis of the lung service related as a significant condition contributing to death but not resulting in the underlying cause. The Hospice Director noted that the Veteran's death certificate was amended by her to reflect the significant history and that he was disabled from this for many years prior to his death. The Hospice Director noted that old scar tissue in right middle lobe as well as diffuse interstitial changes and "stable appearing biapical and right lower lobe scarring," were typical of post TB findings. 

In this case, there are two medical opinions which in one way or another contradict the Medical Director's opinion associating the Veteran's death with the Veteran's service-connected inactive pulmonary tuberculosis -- the Veteran's primary care provider's hypothesis that the Veteran's shortness of breath could be cardiac, possibly related to when the Veteran's blood pressure was running high or related to pain due to multiple bone metastases and that she suspected that the Veteran's fatigue was mostly a result of his age and prostate cancer; and the VA examiner's opinion Veteran's which found that the Veteran's service-connected pulmonary tuberculosis did not substantially or materially contribute to his death. 
 
Thus, the Board finds that the preponderance of the evidence is against a finding that the Veteran's cause of death was etiologically related to his inactive pulmonary tuberculosis. The most probative evidence of record does not demonstrate that it is at least as likely as not that the Veteran's cause of death (metastatic prostate cancer) was related to his active military service or that the Veteran's inactive tuberculosis caused or substantially or materially contributed to his death. In reaching this conclusion, the Board considered the doctrine of reasonable doubt. However, as the evidence of record is not at least in equipoise, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

DIC Pursuant to 38 U.S.C.A. § 1318 

A surviving spouse may establish entitlement to DIC in the same manner as if the Veteran's death were service connected where it is shown that the Veteran's death was not the result of willful misconduct, and the Veteran was in receipt of or entitled to receive compensation at the time of death for a service-connected disability rated totally disabling if (1) the disability was continuously rated totally disabled for the 10 years immediately preceding death, or (2) the disability was rated totally disabled upon separation from service and for at least five years immediately preceding death, or (3) the Veteran was a former prisoner of war, and the disability was continuously rated totally disabling for a period of not less than one year immediately preceding death. 38 U.S.C.A. § 1318 (b); 38 C.F.R. § 3.22(a). 

The Veteran was discharged from active service in July 1947; he died in December 2010. At the time of the Veteran's death, service connection had been in effect since July 27, 1947, for a chest condition at which time he was noted to be 100 percent disabled. Although in July 1947, the Veteran had been rated as 100 percent disabled, for the 10 years immediately preceding his death, he was considered disabled at a zero percent rate; and had been receiving between $67 and $70 since around February 1960. 

Although information regarding decrease in compensation benefits is not of record, pursuant to 38 C.F.R. § 4.97, veterans entitled to receive compensation for tuberculosis were rated under Diagnostic Codes 6701-6724. Since 1945, the general rating formula for inactive pulmonary tuberculosis provides a 100 percent rating for two years after the date of arrest, or inactivity, following active pulmonary tuberculosis. Thereafter, for four years, or in any event, to six years after the date of arrest, a 50 percent rating was assigned. Thereafter, for five years, or to 11 years after the date of arrest, a 30 percent rating was assigned. Following far advanced lesions diagnosed at any time while the disease process was active, a minimum 30 percent rating was assigned. Following moderately advanced lesions, provided there was continued disability, emphysema, dyspnea on exertion, impairment of health, or other similar symptomatology, a 20 percent rating was assigned. Otherwise, only a noncompensable rating was assigned.

Based on the evidence of record, the Board find that the requirements of 38 U.S.C.A. § 1318 for an award of DIC benefits are not met. The evidence fails to show the Veteran was continuously rated totally disabled during the 10 years preceding his death; was continuously rated totally disabled during the five years preceding his death; or was a former prisoner of war. The Board notes that the phrase "entitled to receive" includes a situation in which a veteran would have received total disability compensation at the time of death for service connected disability for the required time period but for clear and unmistakable error (CUE) committed by VA in a decision on a claim filed in the Veteran's lifetime. In this case, the appellant has not alleged any errors. 38 C.F.R. § 3.22 (b)(1). There are also other bases under 38 C.F.R. § 3.22 (b)(3) under which a Veteran may be considered to have been entitled to receive the required compensation, but those are not applicable in this case. As such, the criteria for DIC have not been met and the appellant's claim is, therefore, denied.

ORDER

Entitlement to service connection for the cause of the Veteran's death is denied.

Entitlement to DIC under the provisions of 38 U.S.C.A § 1318 is denied.

______________________________________________
SONJA A. MISHALANIE
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs