Citation Nr: 1719234 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 07-36 635 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for posttraumatic stress disorder ("hereinafter" PTSD).


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

C. Teague, Associate Counsel



INTRODUCTION

The Veteran, who is the appellant, served on active duty in the United States Navy from September 2001 to June 2005.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2006 rating decision of the Waco, Texas, Regional Office (RO) which, in pertinent part, denied service connection for PTSD.

On the October 2007 Substantive Appeal, the Veteran did not request a hearing before a Veteran's Law Judge (VLJ). This appeal was processed using both the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS). Accordingly, any future review of this case should take into consideration the existence of this electronic record.

In April 2009, September 2010, May 2013, November 2013, and November 2014, the Board remanded this matter to the Agency of Original Jurisdiction (AOJ) for further development. The requested actions for each Board Remand have been completed by the AOJ with no further action necessary to comply with the Board's remand directives; the case is once again before the Board for appellate consideration of the issue on appeal. Stegall v. West, 11 Vet. App. 268 (1998). A discussion of the AOJ's compliance with each Board Remand is included in the Duties to Notify and Assist section below.


FINDINGS OF FACT

There is no diagnosis of PTSD in accordance with the American Psychiatric Association Diagnostic and Statistical Manual for Mental Disorders, 4th ed., that is related to a verified stressor event or related to the Veteran's fear of hostile military or terrorist activity.



CONCLUSION OF LAW

The criteria for service connection for PTSD have not been met. 38 U.S.C.A. 
§§ 1110, 1154, 5107(b) (West 2015); 38 C.F.R. §§ 3.303, 3.304(f) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating a claim for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2016). VCAA notice consistent with 38 U.S.C.A. 
§ 5103(a) and 38 C.F.R. § 3.159(b) must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. VCAA notice requirements apply to all five elements of a service connection claim (1) veteran status; (2) existence of disability; (3) connection between service and the disability; (4) degree of disability; and 
(5) effective date of benefits where a claim is granted. Dingess v. Nicholson, 
19 Vet. App. 473, 484 (2006).

In a July 2005 notice letter sent prior to the initial denial of the claim, the RO provided timely notice to the Veteran regarding what information and evidence is needed to substantiate a claim for service connection, as well as what information and evidence must be submitted by the Veteran, and what evidence VA would obtain. An October 2010 notice letter also provided the Veteran with information on the requirements to prove secondary service connection.

VA has also complied with the duty to assist by aiding in obtaining evidence. All known and available records relevant to the pending appeal have been obtained and are associated with the Veteran's electronic claims file. The RO has obtained the Veteran's service treatment records, as well as VA and private treatment records. The April 2009 Board Remand ordered the AOJ to obtain the Veteran's records from the Social Security Administration (SSA), which are now part of the electronic claims file.

To further assist the Veteran with the claim, the September 2010, May 2013, November 2013, and November 2014 Board Remands all requested development to obtain the history and deck logs for the USS Nimitz for the periods that the Veteran served aboard that vessel. The electronic record now contains both histories and deck logs for the Veteran's period of service aboard the USS Nimitz.

The Veteran was afforded VA medical examinations in August 2007, October 2012, August 2013, July 2014, and October 2015. 38 C.F.R. § 3.159(c)(4) (2015); Stegall, 11 Vet. App. at 268. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examination reports, taken together, are thorough and adequate and provide a sound basis upon which to base a decision with regard to the issue adjudicated in this decision. The opinions, as a whole, consider all the pertinent evidence of record, to include the statements of the Veteran, and provide rationales for the opinions stated. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion as to the issue of service connection for a back disability has been met. 38 C.F.R. § 3.159(c)(4). A further discussion of the adequacy of the VA examinations is discussed in the Service Connection section below.

Hence, VA has provided assistance to the Veteran as required under 38 U.S.C.A. §§ 5103a, 5103A, 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide the appeal. Mayfield v. Nicholson, 444 F. 3d 1328 (Fed. Cir. 2006). As such, no further notice or assistance is required to fulfill VA's duties to notify and assist the Veteran in the development of the appeal adjudicated herein.


Service Connection Laws and Regulation

The Veteran has asserted entitlement to service connection for posttraumatic stress disorder (PTSD). The Board notes that the Veteran's June 2005 original claim included claims for service connection for both PTSD and panic attacks. In a September 2007 rating decision, the AOJ granted the Veteran service connection for an anxiety disorder, not otherwise specified.

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a) (conforming to the American Psychiatric Association 's Diagnostic and Statistical Manual of Mental Disorders (DSM)); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f).

The evidence necessary to establish the occurrence of a stressor during service to support a diagnosis of PTSD will vary depending upon the circumstances of the case. VA has provided for specific types of cases where lay evidence alone may be sufficient to describe the stressor and further corroborating evidence will not be required. Corroborating evidence is not required in cases where (1) PTSD is diagnosed in service; (2) the evidence establishes the Veteran engaged in combat with the enemy and the claimed stressor is related to that combat; (3) the stressor is related to the Veteran's fear of hostile military or terrorist activity; and (4) the evidence establishes that the Veteran was a prisoner-of-war and the stressor is related to that prisoner-of-war experience. 38 C.F.R. § 3.304 (f)(1), (f)(2), (f)(3), (f)(4). In any of the above situations, the Veteran's lay testimony or statement is accepted as conclusive evidence of the stressor's occurrence and no further development or corroborative evidence is required providing that such testimony is found to be consistent with the circumstances, conditions, or hardships of service and there is no clear and convincing evidence to the contrary. See 38 U.S.C.A. § 1154 (b); 38 C.F.R. § 3.304 (f)(1), (f)(2), (f)(4). 

For purposes of this section, "fear of hostile military or terrorist activity" means that "a Veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror." Id.

Congress has specifically limited entitlement for service-connected disease or injury to cases where such incidents have resulted in disability. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141 (1992); Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998). A current disability means a disability shown by competent evidence to exist. Chelte v. Brown, 10 Vet. App. 268 (1997). The most fundamental requirement for any claim for service connection is current disability. See Degmetich v. Brown, 104 F.3d 1328 (1997) (indicating VA compensation only may be awarded to an applicant who has disability existing on the date of application, not for past disability); but see McClain v. Nicholson, 21 Vet. App. 319 (2007) (further clarifying that this requirement of current disability is satisfied when the claimant has the disability at the time the claim for VA disability compensation is filed or during the pendency of the claim and that a claimant may be granted service connection even though the disability resolves prior to VA's adjudication of the claim).

A veteran who served during a period of war, or after December 31, 1946, will be considered to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior to service and was not aggravated by such service. 38 U.S.C.A. § 1111 (West 2014); 38 C.F.R. § 3.304(b) (2016).

Where such defects, infirmities or disorders are not noted when examined, accepted, and enrolled for service, pursuant to 38 U.S.C.A. § 1111 and 38 C.F.R. § 3.304, in order to rebut the presumption of soundness on entry into service, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. See Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004).

Service Connection for PTSD

The Veteran's entrance examination was silent for any psychiatric disabilities. In April 2002, the Veteran was referred by the squadron Command Master Chief for medical evaluation following poor work performance, stress associated with not seeing his son, and the death of four friends two days prior. The examiner noted that the Veteran completed an anger management program in bootcamp. The Veteran reported nightmares, sweating, and irritability. The military physician diagnosed possible PTSD with acute adjustment disorder and ordered further evaluation. 

In June 2002, the Veteran was referred for mental health evaluation due to adjustment difficulties. On examination, the Veteran reported that he was upset that some friends in Texas died as a result of street crime and that he didn't know the location of his son. The military psychologist noted a persistent pattern of behaviors violating age-related societal norms, including aggression, fights, use of weapons, and drug sales. The Veteran was maintained adequate eye contact, was polite, and was responsive to inquiry.

Under Axis I, the military psychologist diagnosed the Veteran with partial features of PTSD, existed prior to service, a sleep disturbance that existed prior to service, and a past history of conduct disorder. Under Axis II, the military psychologist diagnosed the Veteran with features of a personality disorder, not otherwise specified and ruled a full diagnosis a personality disorder. Diagnosis under Axis III was deferred to the Veteran's primary care provider.

In May 2003, the Veteran underwent a psychological evaluation following a disciplinary action for violating a commanding officer's orders. The military addiction counselor gave an Axis I diagnosis of occupational problems and no diagnosis for Axis II. 

On an October 2003 post-deployment survey, the Veteran indicated that he was not engaged in direct combat where he discharged his weapon and that during the deployment he never felt that he was in great danger of being killed. The Veteran did report that he witnessed a coalition service member wounded, killed, or dead, during the deployment. The comment section of the survey stated that the Veteran "experienced a non-combatant casualty during deployment." The Veteran indicated that he did not intend to seek counseling or care for mental health and that his overall health was good. On a March 2004 medical survey, the Veteran indicated that he had no mental health or emotional problems for which he needed to get treatment or counseling.

On the June 9, 2005 Report of Medical History, the Veteran indicated that he had anxiety or panic attacks, frequent trouble sleeping, received counseling, and had been evaluated or treated for a mental condition. The Veteran reported that he was also seeing mental health providers for PTSD. Under the explanation section of the separation examination, the Veteran indicated that he answered yes to the aforementioned conditions "for things that happened in the past." The examiner indicated the Veteran was "seen [by] mental health for PTSD [symptoms]- civilian pre-enlistment 'gang shootings.'"

An October 2005, a VA PTSD screening was negative, with a score of 0.

In April 2006, the Veteran underwent a social services assessment at a private hospital. The Veteran reported he spent 11 months in Iraq and was having difficulties with what he had witnessed there. The Veteran reported that in-service, he was diagnosed with PTSD and received counseling for 7 or 8 months. The Veteran reported difficulties in public places because he could not watch everyone.

PT states that in Iraq, an attack can come from anyone man, woman, or child...PT states that he witnesses brutality & lack of respect for life...PT states he feels abandoned by the military...

See April 2006 Social Services Assessment Arlington Memorial Hospital.
In June 2006, the Veteran provided a statement in support of his claim for PTSD. The Veteran stated that while in service, he witnessed a fellow service member pulled from his bunk after he died in his sleep. The veteran reported anxiety, difficulty sleeping, and social problems as a result of the event. In a follow-up statement, the veteran added that he event took place on the USS Nimitz around 2003. See July 2006 Statement in Support of Claim for Service Connection for Post-Traumatic Stress Disorder.

In February 2007, the Veteran reported severe anxiety and panic attacks and was referred for a mental health evaluation. The Veteran then underwent a VA mental health evaluation where he reported he experienced anxiety, nightmares and intrusive thoughts as a result of his military service. The Veteran reported he believed the sources of his anxiety to be working on the flight deck, his roommate having a heart attack in front of him, and the anthrax shot. The Veteran reported that in-service he was a gunner's mate, who served in Iraq for eleven months and spent eight months in the Persian Gulf. He further reported he had traumatic experiences of being under fire on the flight deck and seeing his roommate die in front of him.

The February 2007 VA examiner diagnosed the Veteran with panic disorder with agoraphobia and posttraumatic stress disorder. The VA examiner indicated that the Veteran was positive for combat trauma, needed further assistance, and added the Veteran "[had witnessed some traumatic experiences in Iraq as a gunner's mate on Navy ship he states that these have caused him to have post-traumatic stress disorder symptoms." See February 2007 Mental Health H & P Note.

In another March 2007 VA mental health note, the Veteran stated that he had witnessed traumatic events such as people jumping out of the ship and that while working in the flight deck one of the men working with him died and was dragged out of one of the rooms.

In August 2007, the Veteran underwent a VA examination to determine the etiology of any mental health disabilities. The Veteran reported his stressor as seeing a sailor who died in his sleep being brought out of the sleeping quarters. He reported another incident where he saw another service member's finger cut off on the flight deck. The VA examiner noted that the Veteran did not report being under attack during the examination.

The Veteran was administered a personality inventory and received a score of negative two, indicating the results of the test were invalid and suggestive of an exaggeration of symptoms. The VA examiner stated that malingering could not be ruled out.

The August 2007 VA examiner diagnosed the Veteran with anxiety disorder, not otherwise specified, and a pre-existing non-service-connected condition. The VA examiner stated the Veteran reported severe PTSD symptoms that were "way out of proportion" to the alleged stressor. The VA examiner added there were a number of inconsistencies in the Veteran's statements and that psychological testing suggestive of symptom exaggeration and that due to those factors, a clear diagnosis other than anxiety disorder, not otherwise specified, that appeared to be pre-existing. The VA examiner concluded there was insufficient evidence to warrant a PTSD diagnosis and that the Veteran did not meet the exposure criteria for PTSD based on his events in the military.

On the Veteran's Substantive Appeal, he indicated that his mental health symptoms began approximately nine months after he entered active duty.

An October 2007 letter from Dr. S.J., the Veteran's treating VA psychiatrist, stated the Veteran had been treated at the mental health clinic since February 2007 for posttraumatic stress disorder and panic disorder with agoraphobia. The VA psychiatrist stated that the Veteran's mental health symptoms were severe and significantly interfered with his daily life.

In April 2009, the Board remanded the Veteran's claim for service connection for PTSD so that his records from the Social Security Administration could be associated with the claims file. In September 2010, the Board again remanded the claim. The Board ordered the AOJ to seek the deck log from the USS Nimitz from May 6 to 12, 2003 and from July 3 to 9, 2003. The Board then stated that if credible support for the stressor was found to obtain a VA examination to determine whether it was at least as likely as not that the Veteran had PTSD due to the verified in-service stressor.

In October 2012, the Veteran underwent a VA examination to determine the etiology of any mental health disabilities. The Veteran reported his stressor as a seeing a sailor he did not know die in his sleep a few rows down from him. The Veteran reported he jumped up, went over, and saw his discolored skin, bloodshot eyes, and open mouth. He reported he did not think much about it at the time but after his deployment it started to bother him.

The VA examiner determined that the Veteran did not meet the criteria for PTSD under the DMS IV. Specifically, the VA examiner found that the Veteran's reported stressors did not meet Criterion A of the DSM-IV. The VA examiner also found that the Veteran did not meet Criterion E or F for a diagnosis of PTSD.

In May 2013, in pertinent part, the Board remanded the Veteran's claim for PTSD for a new VA examination. The Board also requested the deck logs for the USS Nimitz from April to September 2003.

In August 2013, the Veteran underwent a VA mental health examination. The Veteran reported three stressors during the examination. First, the Veteran reported in his sleeping quarters, he woke up and one of his bunkmates was dead and was carried out. The Veteran then reported in a hanger, the top of a fellow sailor's head was severed by the wing of an aircraft. The Veteran stated he did not witness the event, but saw the body carried out. The Veteran's third stressor was the stress of serving on the flight deck. The VA examiner found the Veteran did not have a diagnosis of PTSD that conformed to the DSM-IV criteria. Specifically, the VA examiner found the Veteran's reported stressors did not meet Criterion A of the DSM-IV and that they were not related to a fear of hostile military of terrorist activity. The VA examiner further opined that the Veteran tends to exaggerate symptoms, and the examiner questioned the veracity of statements made during the interview.

In November 2013, the Board remanded the claim for additional records development and, if necessary, a new VA examination.

In July 2014, the Veteran underwent an additional VA examination. The VA examiner determined that the Veteran's described stressors did not meet the DSM-IV Criterion A for a PTSD diagnosis. The VA examiner further indicated that review of the record did not support a DSM-IV diagnosis of PTSD related to military service. Psychological testing administered during the examination indicated an exaggeration of symptoms.

In November 2014, the Board remanded the claim for additional records development and a new VA examination.

In October 2015, the Veteran underwent an additional VA examination. The VA examiner stated that she was ethically unable to provide a diagnosis for the Veteran based on the results of three objective and valid assessment given that day that suggested an overreporting of symptomatology by the Veteran. The VA examiner administered three separate psychological tests and the results of each were positive for overreporting of symptoms. The first test, which the VA examiner withheld the name of to protect the test's integrity, tested response bias specifically related to PTSD symptoms. The Veteran's score on the first test was significantly above the established cutoff, which indicated his performance was not consistent with a person diagnosed with PTSD; rather it was consistent with the test performance of disability claimants simulating symptoms of PTSD.

The name of the second test administered by the VA psychologist was also withheld to protect the test's integrity. The second test was a measure of response bias related to metal illness and used to assess the credibility of the Veteran's self-reporting. The Veteran's responses on the second assessment were above the established cutoff and thus suggested symptom exaggeration by portraying himself as worse off than he may actually be.

The VA psychologist then administered the Minnesota Multiphasic Personality Inventory (MMPI-RF) to the Veteran to assess symptomatology. The VA psychologist found the results of the MMPI-RF invalid because of inconsistent responding and overreporting of symptoms by the Veteran.

After a careful review of the evidence, the Board has determined that the Veteran has not been diagnosed with PTSD and as such, service connection is not warranted. As an initial matter, although some records suggest there was a preexisting condition, as noted above, the Veteran was noted to have no psychiatric abnormalities on his entrance examination. Accordingly, he is presumed sound. There is no clear and unmistakable evidence the condition actually preexisted service; rather, the only evidence suggesting such preexistence just stated there were "partial features of PTSD, existed prior to service" without further explanation or support for this finding. See e.g. Horn v. Shinseki, 25 Vet. App. 231, 240 (2012)(noting that an MEB form containing an x indicating a condition had not been aggravated by service with no analysis or medical explanation accompanying the conclusion fell woefully short of clear and unmistakable evidence). Having found there was no preexisting condition, the claim becomes one of direct service connection.

As the Veteran was diagnosed with partial features of PTSD and possible PTSD during service, the Board carefully considered the provisions of 38 C.F.R. § 3.304(f)(1). In this case, however, the Veteran was never given a PTSD diagnosis during service. Furthermore, to the extent to which he was noted to have possible PTSD or PTSD features, these were linked to being unable to find his son and being upset about the death of his friends in a different state. In other words, the underlying stressors for the inservice treatment were not related to his service. See 38 C.F.R. § 3.304(f)(1)(noting that if the evidence establishes a diagnosis of PTSD during service and the claimed stressor is related to that service, in the absence of clear and convincing evidence to the contrary and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the Veteran's service, the Veteran's lay testimony alone may establish the occurrence of the claimed inservice stressor).

The Board notes the February 2007 VA mental health assessment diagnosed the Veteran with PTSD in accordance with the criteria established under the DSM-IV. However, the Board finds the February 2007 VA examination not probative and inadequate for rating purposes. Specifically, the Board finds the diagnosis was based on inaccurate facts provided by the Veteran during the course of the examination that were material to the diagnosis of PTSD. A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment, including by a veteran. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner's opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the veteran); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that the Board may reject a medical opinion based on an inaccurate factual basis).

The February 2007 VA assessment contained factual inaccuracies that were used by the examiner to support the diagnosis of PTSD. First, the Veteran reported to the February 2007 VA examiner that his military occupation was a gunner's mate when his DD214 reflects that he served as an F-18 Systems Maintenance Technician. Next, the Veteran reported eleven months of service in Iraq; however, his DD214 shows no foreign service during the Veteran's active duty period of service. The Board further notes that the Veteran reported eleven months service in Iraq during the April 2006 private social services assessment. During the April 2006 private assessment, the Veteran also indicated that during service in Iraq, he witnessed brutality, a lack of respect for human life, and difficulties in crowds because in Iraq attacks could come from anyone, man woman, or child. Continuing with the February 2007 VA assessment, the Veteran reported the traumatic experience of being under fire while in service. However, in contrast to both the April 2006 private assessment and February 2007 VA assessment, on his October 2003 post-deployment survey, the Veteran indicated that he was not engaged in direct combat where he discharged his weapon and that during the deployment he never felt that he was in great danger of being killed. The Veteran's reports during the VA exam were used to support the VA examiners finding that the Veteran was positive for combat trauma and needed further assistance. However, as established above, the record does not support a finding that the Veteran engaged in combat with the enemy. The ordinary meaning of the phrase "engaged in combat with the enemy," as used in 38 U.S.C.A. § 1154 (b), requires that a veteran have participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality. VAOPGCPREC 12-99 (Oct. 18, 1999). Service in a combat zone does not establish that a veteran engaged in combat with the enemy. Whether the veteran engaged in combat with the enemy is determined through the receipt of certain recognized military citations or other supportive evidence. West v. Brown, 7 Vet. App. 70 (1994). While the Veterans DD214 notes award of the Global War on Terrorism Expeditionary Medal, there is no indication the Veteran received any awards reflective of combat experience in service.

Similarly, the Board finds not probative, the October 2007 letter from Dr. S.J., that stated the Veteran was treated for PTSD at the mental health clinic since February 2007. Specifically, the letter contained no analysis, rationale, or supporting documentation that showed the Veteran had a current diagnosis of PTSD under the DSM-IV. Black v. Brown, 5 Vet. App. 177, 180 (1993). See also, Kightly v. Brown, 6 Vet. App. 200 (1994); Miller v. West, 11 Vet. App. 345, 348 (1998) (medical opinions must be supported by clinical findings in the record and conclusions of medical professionals which are not accompanied by a factual predicate in the record are not probative medical opinions). The underlying treatment records reflect that while the Veteran was treated at this clinic, his February 2007 initial assessment he related a stressor of witnessing his roommate have a heart attack in front of him. This report is different from his description of seeing the service member who died in his sleep taken away which was previously reported to treating physicians and also different from what he later recounted to VA examiners. During this intake visit he also reported feeling "guilty about helping people kill other people in Iraq" and also described being under fire while on the flight deck. As discussed above, the Veteran's own post deployment survey and furthermore the deck logs of his ship do not support that he was under fire on the flight deck. Significantly, this intake record did not conduct any validity testing or consider the record as a whole as the multiple VA examinations have done. Thus, while the underlying treatment records note the diagnosis of PTSD, as it appears to be based in part on an inaccurate factual predicate, it is not probative. Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (noting that a medical opinion based upon an inaccurate factual premise has no probative value).

Next, the Board finds the August 2007, October 2012, August 2013, July 2014, and October 2015 VA examinations taken as whole, adequate and supported by sufficient rationale. The Board first notes that in none of the five VA examinations was the Veteran given a diagnosis of PTSD in accordance with the DSM-IV. Further, in the August 2007, July 2014, and October 2015 VA examination, the Veteran was administered psychological testing and in each examination the testing revealed the Veteran had exaggerated symptoms.

The August 2007, October 2012, August 2013, July 2014, and October 2015 VA examiners had adequate information on which to base the medical opinion and provided an adequate rationale for the conclusion that is consistent with the facts in this case and is based on medical principles. For these reasons, the Board affords the VA examiner's medical opinions great probative weight. The October 2015 VA examiner also provided a detailed account of the testing administered during the examination and the meaning of the results.

In so holding, the Board has considered the Veteran's lay contentions. However, as discussed above, the record to a certain extent discredited some of the Veteran's descriptions concerning his nature of service and the nature and etiology of his psychiatric symptoms. The Board finds that the VA examiners had sufficient evidentiary basis to support their determinations based on the testing they provided and their review of the record as a whole. Thus, the Board finds that the August 2007, October 2012, August 2013, July 2014, and October 2015 VA examiner's opinions, as a whole, are based on an accurate factual predicate.

With regard to the actual diagnosis of PTSD, lay persons are not categorically incompetent to speak on matters of medical diagnosis or etiology. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). The Board must consider the type of condition specifically claimed and whether it is readily amenable to lay diagnosis or probative comment on etiology. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). In this regard, the Federal Circuit recently held that "PTSD is not the type of medical condition that lay evidence...is competent and sufficient to identify." Young v. McDonald, 766 F.3d 1348, 1352-53 (Fed. Cir. 2014). Regardless, the Board acknowledges the Veteran is competent to report psychiatric symptoms both during and after service. See 38 C.F.R. § 3.159 (a)(2); Jandreau, 492 F.3d at 1377 (discussing that Veteran is competent to report a contemporaneous medical diagnosis); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (discussing general competency of a Veteran to report psychiatric symptoms). 

That notwithstanding, in the instant case, the Board has found the Veteran's lay statements are less probative or persuasive than the medical evidence finding that the Veteran does not meet the DSM-IV criteria for PTSD. Indeed, as noted above, psychiatric testing has been performed, and the VA examiners relied on such testing as well as their expertise and training in psychology. The Federal Circuit has held that the Board can favor competent medical evidence over lay statements offered by the Veteran, as long as the Board neither deems lay evidence categorically incompetent nor improperly requires a medical opinion as the sole way to prove causation. King, 700 F.3d at 1344. Moreover, although the Veteran is competent to describe his psychiatric symptoms, by regulation, PTSD is a condition that can only be diagnosed by a medical professional, according to 38 C.F.R. § 3.304 (f).

In summary, the most probative evidence of record establishes that there is no current diagnosis of PTSD. A threshold requirement for the granting of service connection is evidence of a current disability. In the absence of evidence of a current disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

The Board does not doubt the Veteran's belief that he has PTSD as a result of his service, but finds there is no competent medical evidence or opinion to corroborate this contention. See 38 C.F.R. § 3.159 (a)(1) (competent medical evidence means evidence provided by a person who is qualified through education, training or experience to offer medical diagnoses, statements, or opinions). There is no question he has significant psychiatric symptoms and is already service-connected for anxiety. Unfortunately, given the inconsistencies of record and VA examination opinions as outlined above, the Board finds the preponderance of the evidence is against the Veteran's service connection claim for PTSD. 38 U.S.C.A. § 5107; 
38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).








ORDER

Entitlement to service connection for PTSD is denied.



____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs