Citation Nr: 1806346 
Decision Date: 01/23/18 Archive Date: 02/07/18

DOCKET NO. 12-06 423 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUE

Entitlement to service connection for an eye disorder, to include residuals of an infection of the eyes.


WITNESSES AT HEARING ON APPEAL

Veteran and M.H.


ATTORNEY FOR THE BOARD

N.K., Associate Counsel 







INTRODUCTION

The Veteran served on active duty from August 1956 to July 1960. 

The Veteran's claim comes before the Board of Veterans' Appeals (Board) on appeal from a June 2011 rating decision of the Department of Veterans Affairs' (VA) Regional Office (RO) in Reno, Nevada. 

In May 2013, the Veteran testified during a hearing before the undersigned Veterans Law Judge (VLJ) at the RO; a transcript of that hearing is of record and is located in the Veteran's Virtual VA file. 

This appeal was processed using the Veterans Benefits Management System (VBMS) and Legacy Content Manager (LCM). LCM contains the 2013 Board hearing transcript, additional VA treatment records, and documents that are either duplicative of the evidence in VBMS or not relevant to the issue on appeal.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (West 2012).


FINDING OF FACT

The most probative evidence of record indicates that the Veteran's eye disorder did not begin during active service and was not otherwise due to active service.


CONCLUSION OF LAW

The criteria for service connection for an eye disorder have not been met. 38 U.S.C. § 1131 (West 2012); 38 C.F.R. §§ 3.303 (2017). 



REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

VA's duty to notify was satisfied by a letter dated in November 2010. See 38 U.S.C. §§ 5102, 5103, 5103A (2012); 38 C.F.R. § 3.159 (2017); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Next, the duty to assist contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2017). VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C. § 5103A (West 2012) and 38 C.F.R. § 3.159(c) (2017). Relevant service treatment and other private and VA medical records have been associated with the claims file. The Veteran was also afforded a VA examination in September 2016 with an October 2016 addendum opinion that, taken together, are fully adequate to decide the claim as they address the relevant evidence of record and provide opinions regarding the Veteran's theory of service connection. 

Additionally, the Veteran testified at a May 2013 Board hearing. A VLJ who conducts a hearing must fulfill two duties under 38 C.F.R. § 3.103(c)(2) (2017). Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the May 2013 Board hearing, the VLJ asked questions to ascertain the presence and etiology of his eye disorders. No pertinent evidence that might have been overlooked and that might substantiate the claim was identified by the Veteran. The hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim. Additionally, the Board remanded the claim to obtain an etiological opinion. Therefore, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2). 

The Board is further satisfied that there has been substantial compliance with the prior July 2013 remand directives and the Board may proceed with review. See Stegall v. West, 11 Vet. App. 268 (1998). In the July 2013 remand, the Board requested that the Veteran clarify whether it was his right or left eye which was on appeal, that the RO obtain any outstanding VA treatment records and that a new VA examination and opinion be afforded for the Veteran's eyes. The Veteran was requested to clarify such development in a September 2016 letter, the Veteran's most recent treatment records were obtained from the Las Vegas VAMC and an examination was obtained in September 2016 as well as an addendum opinion in October 2016. Accordingly, there has been substantial compliance with the prior Board remand.

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal. 

Merits

In October 2010 the Veteran submitted a claim for service connection for an eye disorder. The Veteran asserted that he believed his infection of the eye is caused by or related to his service. He asserts that he had an infection of the eye caused by his duties as a medic working with autopsies.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131 (West 2012); 38 C.F.R. § 3.303(a) (2017). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2017). 

In addition, service connection for certain chronic diseases may be established on a presumptive basis by showing that the condition manifested to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137 (West 2012); 38 C.F.R. §§ 3.307, 3.309(a) (2015); Fountain v. McDonald, 27 Vet. App. 258, 271-72 (2015). Although the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309 (2017); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

The existence of a current disability is not at issue in this appeal. See 38 C.F.R. 
§ 3.303(a); Holton, 557 F.3d at 1366. There are diagnoses of cataracts, a chorioretinal scar, possible toxoplasmosis, dry eye syndrome, and presbyopia. See August 2010 VA treatment records; September 2016 VA examination report; September 2011 VA treatment records. The issue of in-service incurrence and a relationship to service, however, remain at issue. See 38 C.F.R. § 3.303(a); Holton, 557 F.3d at 1366. 

The Veteran's service treatment records (STRs) are absent complaints of, or treatment for, any eye disorders or symptoms. The service enlistment examination in 1956 noted a normal clinical evaluation of the eyes. The STRs were silent for any eye complaints, treatment, or diagnoses. The service discharge examination in July 1960 also noted normal clinical evaluation of the eyes. The Veteran's DD214 Form confirms that he was a hospital man during active service. 

The Veteran complained of dry eye and eye irritation in August 2010 VA treatment records. The Veteran reported that he had a burning sensation of 1 to 2 months. Later that month, the Veteran reported his eye was better, but there remained eye irritation. 

In a December 2010 lay statement, the Veteran reported that after leaving service a few months later he noticed a weakness in his eye. He noted that at this point he was prescribed glasses and referred to eye professionals Dr. W. and Dr. J. 

In a September 2011 VA record, the Veteran reported intermittent blurry vision. The assessment was chorioretinal scars - possible inactive toxoplasmosis chorioretinitis - dry eye syndrome, cataracts, and presbyopia. The Veteran reported no significant ocular history, other than a fall from 50 feet over 20 years prior. 

A September 2011 VA eye examination was conducted. The Veteran reported intermittent blurry vision which improved with blinking, and was mostly at near sights. No significant ocular history was noted and further findings with regard to the bilateral eyes were normal. The assessment included chorioretinal scars with possible inactive toxoplasmosis chorioretinitis, dry eye syndrome, cataracts and refractive error. No nexus opinion was provided.

In a November 2011 lay statement, the Veteran asserted that a Dr. J. told him that the Veteran's eye condition was caused by having touched a patient in service and rubbing his eye.

In a January 2013 VA record, the ocular history included cataracts, chorioretinal scars, and a trauma or injury of a fall from 50 feet over 20 years prior. The diagnoses were cataracts, chorioretinal scars, dry eye syndrome, and refractive error.

The Veteran and his wife provided testimony at his May 2013 Board hearing regarding the onset of his eye disorder. Specifically, the Veteran noted that while he was in the service he was a Navy medic and did work on autopsies. Following service, upon having irritation of the eye the Veteran testified that he sought treatment from Drs. J and W who told him that the Veteran must have touched a patient while performing an autopsy and rubbed his eye, which caused irritation in the form of a scar. The Veteran noted that he has been treating the irritation and scratchy feeling with cream. See May 2013 Board Hearing Transcript, pp. 2-4. The Veteran's wife testified that she noticed when the Veteran was discharged he began to have eye problems and headaches, which he was prescribed eye drops for. The Veteran's wife also testified that the Veteran's condition had gotten worse over the past five years. See Board Hearing Transcript, p. 16. 

In a June 2013 VA medical record, the Veteran requested that the eye clinic make the determination that the scarring in his eyes was indeed acquired during his tour of duty with the military. Dr. J noted that the Veteran must go to the Compensation and Pension office to initiate the process to determine if the chorioretinal scarring was acquired during his tour of duty. 

A September 2016 VA examination and October 2016 addendum opinion for the eye disorder were obtained. At the September 2016 VA examination conducted upon review of the claims file, the diagnosis of bilateral cataracts and a chorioretinal scar of the left eye were confirmed, and originally noted as being diagnosed in 2010. The examiner opined that the cataracts appear to be age-related, as the severity is typical of a man of the Veteran's age, regardless of other conditions. The examiner noted that such scars are generally caused by trauma or infectious disease. The Veteran reported blurred vision with distance which was worse without his glasses. The examiner then opined that because no records during service documented injury to the eye or infection disease, it was less likely than not that the scars were related to service. 

Thereafter, an October 2016 addendum opinion by a different examiner was provided upon a review of the claims file. That examiner provided a comprehensive opinion considering the Veteran's lay statements in addition to his September 2011 diagnosis of a chorioretinal scar of the left eye which was due to possibly inactive toxoplasmosis chorioretinitis. The examiner defined toxoplasmosis, noting that if such were related to scarring of the eye it would be in the form of a parasite caused by toxoplasma. The examiner took specific note of prior findings that if the Veteran had toxoplasmosis, such was due to inactive toxoplasmosis chorioretinitis. The examiner noted that, because the record did not document injury to the eye or infectious disease contracted during service, he found it less likely than not that the Veteran has a diagnosis of residuals of infection of the eye that was incurred in or caused during service. Furthermore, the examiner supported the opinion with literature finding that toxoplasmosis is worldwide, therefore concluding that it was more likely that the Veteran's 2010 left eye diagnosis was related to something that occurred within the 40 years post service period instead of specifically during his brief time in the Philippines. Specifically, the examiner noted that the etiology of scarring of the eye could be due to any number of risk factors, including trauma, autoimmune disease and/or infection. Finally, the examiner noted that any acute infection of toxoplasmosis would demonstrate an immediate increase in the lgM antibody measurable for life. However, the Veteran's medical treatment records and examinations do not reflect reference to an elevated antibody or objective proof of the parasites on pathological cultures. Therefore, the examiner noted this as further proof that it was less likely than not that the Veteran's left eye condition was related to his service from 1956 to 1960. 

After the October 2016 addendum opinion the Board obtained an expert opinion from an ophthalmologist regarding the Veteran's residuals of an eye infection. In March 2017 the expert provided the opinion that it was less likely than not that the Veteran's chorioretinal scarring in the eye is related to his service. The opining ophthalmologist found that the etiology of the scarring could be diverse, including trauma, infection and resultant of autoimmune disease. He stated that it is more likely that the Veteran's eye diagnosis was related to something that occurred within the post service period instead of specifically during his time in the Philippines. Regarding his diagnosis of dry eye syndrome, the ophthalmologist found that DES is a common condition which can have its etiology in a number of conditions including thyroid disorders, taking certain medications and even advanced age. The ophthalmologist noted that the Veteran's initial complaints of eye irritation began in August 2010 and therefore it is less likely than not that his DES is related to his time in service. The expert further opined that the Veteran's cataracts are more likely than not age related and less likely than not related to his time in service, as cataracts are an age related condition and are typical of a man the Veteran's age. Finally, regarding refractive error, the expert found that as the prevalence of refractive error is great, it is less likely than not that such is related to the Veteran's service. 

Thereafter the expert submitted an addendum to his opinion, specifically addressing medical literature addressed in the September 2016 and October 2016 medical opinions. The expert noted that he had reviewed both opinions including the cdc.gov and Mount Sinai medical literature cited in such. The expert stated that although such sources are well known in the ophthalmic communities, he disagreed with the opinion regarding toxoplasma Igm. The expert noted the cited literature to be accurate in that in an acute infection Igm levels rise and then eventually return to normal and that IgG levels rise and remain elevated, and may be an indicator of past infection. However, the expert noted nowhere in the Veteran's file any mention of either IgM or IgG serum titers. Therefore, the ophthalmologist found such literature sources to be accurate and agreed with the September and October 2016 opinions. 
 
The Board finds that the most probative evidence of record demonstrates that the Veteran's eye disorders is not caused or related to his service. The September 2016, October 2016, and March 2017 opinions, taken together, were provided upon thorough review of the Veteran's claims file and examination of the Veteran. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (noting that the central issue in determining the probative value of an opinion is whether the examiner was informed of the relevant facts in rendering a medical opinion). Additionally, the examiners provided supporting explanations for the opinions provided. The Board thus affords significant probative value to these opinions. See Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007) (holding that a mere medical conclusion is insufficient to permit the Board to make an informed decision regarding the probative value of that opinion). 

These opinions relied, in part, on an absence of eye symptoms, treatment, or diagnoses during active service. The Board finds that no such infection or trauma occurred during service. First, the Veteran did not assert that any trauma to the eye during service occurred. Second, although the Veteran asserted that the current disorders are related to an in-service incident, the Board finds that the evidence of record supports a finding that this did not occur. 

The Board takes note of the Veteran's statements that Dr. J. told him that his eye disorder was due to touching a patient or performing an autopsy in service and then touching or rubbing his eye. See November 2011 lay statement. Although the Veteran's statements indicate a positive medical opinion from Dr. J., the Board finds that there is no adequate rationale that exists for this opinion; instead it seems vague and based upon inconclusive findings. The Board notes that the probative value of a medical professional's statement is dependent, in part, upon the extent to which it reflects "clinical data or other rationale to support his opinion." Bloom v. West, 12 Vet. App. 185, 187 (1999); see also Black v. Brown, 5 Vet. App. 177, 180 (1995). A bare conclusion, even one reached by a qualified health care professional, is not probative without a factual predicate in the record and a thorough rationale or analysis that the Board can evaluate. Miller v. West, 11 Vet. App. 18, 22 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Neither a VA medical examination report nor a private medical opinion is entitled to any weight in a service-connection or rating context if it contains only data and conclusions without reasoning or rationale. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). In contrast, the unfavorable opinions of record are based on through examination of the Veteran and review of the claims folder, in addition to supporting medical literature. See September 2016 and October 2016 VA Examination Reports and Opinions; March 2017 VA Opinion.

To the extent that the Veteran and his wife believe that his current eye disorder is related to his service, they are not competent to provide such etiological opinion. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007) (noting that lay testimony is competent to establish observable symptomatology but not competent to establish medical etiology or render medical opinions). This is because the determining the etiology, including causation due to an in-service incident, of an internal medical condition such as an eye disorder, is a complex medical determination for which the Veteran is not qualified. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (holding that a lay witness is competent to testify to that which the witness has actually observed and is within the realm of his personal knowledge). Moreover, any testimony in this regard is outweighed by the specific findings of the VA examiners, which was provided upon medical expertise, a review of medical literature, a review of the claims file, and consideration of the Veteran's lay statements.

As such, the criteria for service connection have not been met and the Veteran's claim is denied.


ORDER

Entitlement to service connection for residuals of an infection of the eyes is denied.




____________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs